UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAYLA WALKER, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1164-X |
| | § | |
| CITY OF RICHARDSON, TEXAS, et al., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Kayla Walker and David Conklin ("the Whistleblowers") are police officers in the Richardson Police Department ("RPD") who reported that RPD unlawfully used a traffic-ticket-quota system.  Walker and Conklin sued the City of Richardson and several RPD leaders, including Gary Tittle, Jamie Gerhart, James Holley, Michael Fitzsimmons, and Chad Swiere.  Those defendants now move to dismiss.  [Doc. 19]. For the reasons below, the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** the Whistleblowers' speech-retaliation, Texas Whistleblower Act ("TWA"), declaratory-judgment, and injunctive-relief claims.  The Court **DISMISSES WITH PREJUDICE** for lack of jurisdiction the Whistleblowers' mandamus claim.

**I.  Factual Background**

Texas law prohibits a police department from "suggest[ing] to a peace officer . . . that the peace officer is . . . expected to issue a predetermined or specified number

1

of . . . traffic citations within a specified period."[1]  The Whistleblowers claim that the RPD flouts that statutory command by posting summaries of each officer's ticket-writing numbers each week and punishing those who fall behind with "disciplinary action, including poor evaluations that would lead to immediate negative working conditions and that could lead to termination for cause."[2]  Eventually, Walker reported that quota system to the Texas Attorney General's Office, the Texas Rangers, the Dallas County District Attorney's Office, and the Richardson City Council.  Conklin also spoke to the press about the quota system.

In response, RPD officers allegedly began retaliating against the Whistleblowers.  Specifically, Defendants Gerhart and Holley called Conklin a "liar" and said Conklin was "full of shit."[3]  On multiple occasions, Fitzsimmons "ignored" Conklin and appeared "clearly upset" with Walker.[4]  Swiere gave Walker bad scores on a performance evaluation for the categories of "self-initiated activity" and "self-awareness."[5]  Walker also claims that she received a "commendation"—a gold star for her personnel file—that never made it into her personnel file and that she deserved another commendation for catching a burglar but never got it.  Both Whistleblowers

---

[1] TEX. TRANSP. CODE § 720.002(b)(1).  The Court recites the following facts as alleged in the complaint.

[2] Doc. 13 at 9.

[3] *Id.* at 23.

[4] *Id.* at 24.

[5] *Id.* at 25.

complain of "[r]ude interruptions" while speaking.[6]  One officer even told Walker that she couldn't "wear sunglasses in the briefing room."[7]

Conklin also applied for a "promotion to the position of Acting Sergeant."[8] Despite being the most qualified applicant, Conklin didn't get the position.  Later, Conklin applied for a "promotion to Police Training Officer," but he didn't get that position either.[9]

On April 26, 2022, the Whistleblowers began to take sick days due to stress and anxiety.  The Whistleblowers are now on Family Medical Leave Act ("FMLA") leave, which allows them "to be paid for accrued vacation time, accrued sick time, and for donated leave time."[10]  Their complaint asserts that, "as of the end of November [2022], both [Whistleblowers] will be on unpaid FMLA leave."[11]  Once FMLA leave expires, they claim, they'll "be completely constructively discharged."[12]

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[13]  To survive a motion to dismiss, "a complaint

---

[6] *Id.* at 26.

[7] *Id.* at 33.

[8] *Id.* at 27.

[9] *Id.* at 28.

[10] *Id.* at 40.

[11] *Id.*

[12] *Id.* at 41.

[13] *See Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[14]   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

### III. Analysis

The Whistleblowers bring claims (A) under the First Amendment, (B) under the TWA, (C) for declaratory judgment, and (D) for mandamus relief.[16]   The Court considers each in turn.

### A.  First Amendment

The Whistleblowers sue under 42 U.S.C. § 1983, alleging retaliation for exercise of their First Amendment speech rights.   "To establish a § 1983 claim for retaliation, Plaintiffs must show . . . they suffered an adverse employment action."[17]  Defendants assert that the Whistleblowers can't do so.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[18]   Likewise, a "campaign of retaliatory harassment [can] amount[] to an adverse employment action" if it "rise[s] to such a level as to constitute a constructive adverse employment action."[19]   Conversely, "mere

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

[15] *Id.*

[16] The Whistleblowers style those last two as a single claim.   The Court considers them separately because Defendants raise separate objections for each claim.

[17] *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

[18] *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (cleaned up).

[19] *Id.* at 160 (cleaned up).

. . . criticism," "investigations," and "false accusations" don't constitute adverse employment actions.[20]

To begin, the Whistleblowers' allegations about negative remarks and rude behavior don't rise to the level of adverse employment actions because they constitute, at best, mere criticism.[21]  Likewise, Walker's allegation that Swiere gave her bad scores on an evaluation constitutes mere criticism.  But the Whistleblowers' (1) failure-to-promote and (2) unpaid-leave allegations come closer.

First, Conklin claims that he applied for—but didn't receive—a "promotion" to "the position of Acting Sergeant" and to the position of "Police Training Officer."[22] Although failures to promote can constitute adverse employment actions, a plaintiff may not, in conclusory fashion, label a new job a "promotion."  Instead, a plaintiff must allege facts that allow a court to "compare the nature of the employee's current duties, compensation, and benefits [to the] duties, compensation, [and] benefits in the different position in question."[23]  Here, the complaint doesn't provide any details about those positions or Conklin's current position, so the Court cannot conduct that analysis.  Although the Whistleblowers now aver that "these positions come with a

---

[20] *Id.* at 157–58.

[21] *See, e.g.*, *Marchman v. Crawford*, 726 F. App'x 978, 984 (5th Cir. 2018) (per curiam).

[22] Doc. 13 at 27, 28.

[23] *Harrison v. Assocs. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990); *accord Fonteneaux v. Shell Oil Co.*, No. H-05-4033, 2007 WL 7210406, at *2 (S.D. Tex. Dec. 14, 2007), *aff'd*, 289 F. App'x 695 (5th Cir. 2008) (per curiam); *see also Higbie v. Kerry*, 605 F. App'x 304, 309 (5th Cir. 2015) (per curiam) (asking whether a role involved "significant prestige or any benefits").

5

pay raise," they admit that they'll need to "add[]" those allegations "to a[] future amended pleading."[24]

Second, the Whistleblowers contend that the RPD "constructively placed [them] on unpaid leave because of the harassment against them."[25]  It's true that "[b]eing placed on unpaid leave . . . [constitutes] an adverse employment action" because it "necessarily affect[s] [] compensation."[26]  But here's the problem: The Whistleblowers haven't alleged that RPD has already placed them on leave.  They merely allege that "as of the end of November [2022]"—about two months **after** they filed the operative complaint—"both Officers Walker and Conklin **will be** on unpaid FMLA leave."[27]  But those "allegations of *possible* future injury are not sufficient" to state a claim.[28]  Although the Whistleblowers now claim that they are both currently "on unpaid leave," they need to update their complaint to add allegations about their current unpaid leave.[29]   Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the Whistleblowers' speech-retaliation claims.

---

[24] Doc. 23 at 11.

[25] *Id.* at 16.

[26] *Garcia v. Garland Indep. Sch. Dist.*, No. 3:11-CV-0502-N-BK, 2012 WL 4341811, at *4 (N.D. Tex. Aug. 29, 2012) (Toliver, M.J.), *report and recommendation adopted*, No. 3:11-CV-0502-N-BK, 2012 WL 4358633 (N.D. Tex. Sept. 24, 2012) (Godbey, J.).

[27] Doc. 13 at 40 (emphases added).

[28] *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (cleaned up).  Although it's true that a "certainly impending" injury can suffice, the complaint states that the Whistleblowers may be able to "recertify the[ir] medical conditions" to qualify for more paid leave.  *Id.* (cleaned up).  So it's not clear from the complaint that their injury is certain to occur.

[29] Doc. 23 at 13.  Because the Whistleblowers haven't alleged the details of the adverse employment actions at issue, Defendants' assertion of qualified immunity is not yet ripe.  Accordingly, the Court will not opine on qualified immunity until the Whistleblowers have updated their pleadings.

## B.  Texas Whistleblower Act

Under the TWA, "[a] state or local governmental entity may not . . . take [] adverse personnel action against[] a public employee who in good faith ***reports*** a violation of law."[30]  Only Walker brings a TWA claim, and Defendants assert that Walker fails to allege a "report."

A "report" means "any disclosure of information regarding a public servant's employer tending to directly or circumstantially prove the substance of a violation of . . . civil law."[31]  But a report "must convey facts" instead of "unsupported opinions or legal conclusions."[32]  Here, Walker alleges that she "reported the illegal ticket quota."[33]  But those allegations don't divulge whether Walker provided the authorities with information or instead gave unsupported opinions.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Walker's TWA claim.[34]

---

[30] TEX. GOV'T CODE § 554.002(a) (emphasis added).

[31] *Castaneda v. Tex. Dep't of Agric.*, 831 S.W.2d 501, 503–04 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied).

[32] *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 184 (Tex. 2022).

[33] Doc. 13 at 8; *see also id.* at 14 (alleging the Walker "contacted the Texas [A]ttorney General's Office and notified it of the RPD's illegal Quota scheme").

[34] Defendants also contend that Walker can't establish an "adverse personnel action."  But Texas law defines "[p]ersonnel action" to include actions that affect a "performance evaluation." TEX. GOV'T CODE § 554.001(3).  Oddly enough, Walker's briefing doesn't contend that her negative performance evaluation qualifies, although her complaint makes that argument.  In any future briefing on this issue, Walker should develop not only whether unpaid leave constitutes an adverse personnel action but also whether her negative performance review constitutes an adverse personnel action.

## C. Declaratory Judgment

The Whistleblowers seek a "declaratory judgment declaring that the average citation policy enforced by the Individual Defendants violates the Texas Transportation Code at Section 720.002."[35]  There are two problems with that claim.

First, the Declaratory Judgment Act allows a court "to declare the rights and other legal relations of any interested party" only "[i]n a case of actual controversy."[36] Here, the Whistleblowers admit that "the sector average line of the Stat Sheet where the numbers of tickets were averaged has been removed."[37]  Yet they still ask the Court to declare that "the average citation policy" is unlawful.[38]  Because there's no live controversy over the average citation policy, the Court cannot issue a moot declaratory judgment.

Second, "the Declaratory Judgment Act [] does not create a federal cause of action."[39]  To obtain a declaratory judgment, the plaintiff must show an "independent private right of action."[40]  But the Whistleblowers don't contend that Section 720.002 creates a private right of action.[41]  By its own terms, Section 720.002 provides only "a

---

[35] Doc. 13 at 58.

[36] *Harris Cnty. v. Merscorp Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) (cleaned up).

[37] Doc. 13 at 21.

[38] *Id.* at 58.

[39] *Merscorp*, 791 F.3d at 552.

[40] *Id.* at 553.

[41] *Id.* (declining to issue a declaratory judgment where the plaintiffs "do not contend that [a Texas statute] itself creates a private right of action").

ground for removal from the person's position."[42]   Because the Whistleblowers haven't demonstrated that they have a private right of action to enforce Section 720.002, the Court cannot render the requested declaratory judgment about Defendants' conduct in relation to Section 720.002.   The Court **DISMISSES WITHOUT PREJUDICE** the Whistleblowers' declaratory-judgment claim.

### D. Mandamus

The Whistleblowers ask the Court to enter a writ of mandamus "barring the future use of Sector Averaging[ and] bar[ring] the use of" sheets comparing officers' citation numbers.[43]   But "[f]ederal courts do not have jurisdiction to issue a writ of mandamus against a state actor or agency."[44]   Accordingly, the Court lacks jurisdiction over the Whistleblowers' mandamus claim and **DISMISSES WITH PREJUDICE** that claim for want of jurisdiction.[45]

---

[42] TEX. TRANSP. CODE § 20.002(e); *see also Rawlings v. Gonzalez*, 407 S.W.3d 420, 426 (Tex. App.—Dallas 2013, no pet.) ("A violation of section 720.002 of the Texas Transportation Code by an elected official is misconduct and a ground for removal from office.  Quo warranto proceedings provide the exclusive means by which the public may protect itself from unlawful occupancy of a public office." (citation omitted)).

[43] Doc. 13 at 59.

[44] *Wilkerson v. Dall. Cnty. Cts.*, No. 3:13-CV-1852-M-BH, 2013 WL 4441977, at *2 (N.D. Tex. Aug. 20, 2013) (Lynn, J.); *accord Shirley v. Starkey*, No. 10-40969, 2011 WL 2161876, at *1 (5th Cir. June 2, 2011) (per curiam) ("[F]ederal courts lack the authority to issue a writ of mandamus to direct the performance of a state or county actor or agency.").  Although Defendants only allude to this jurisdictional problem, the Court must consider its own jurisdiction *sua sponte.*

[45] Plaintiffs seek injunctive relief under their mandamus and declaratory-judgment claims in the form of an injunction "requiring the individual Defendants to obey Section 720.002 and implement policies and procedures to end illegal ticket quotas."  Doc. 13 at 58 (requesting equitable relief "[v]ia Mandamus and/or under the Declaratory Judgment Act").   Because Plaintiffs' mandamus and declaratory-judgment claims fail, the Court doesn't address the propriety of that injunctive relief.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** the Whistleblowers' free-speech retaliation, TWA, and declaratory-judgment claims.   The Court **DISMISSES WITH PREJUDICE** for lack of jurisdiction the Whistleblowers' mandamus claim.

**IT IS SO ORDERED** this 5th day of August, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

10